**ACTION AUTO GLASS and Visions Auto Glass, Plaintiffs,**

v.

**AUTO GLASS SPECIALISTS, Defendant.**

**No. 1:00–CV–756.**

United States District Court, W.D. Michigan, Southern Division.

March 15, 2001.

Jon J. Schrotenboer, Nelson, Krueger & Schrotenboer, PC, Hudsonville, MI, for Action Auto Glass, Visions Auto Glass.

Mark H. Verwys, Plunkett & Cooney, PC, Grand Rapids, MI, for Auto Glass Specialists.

Stephen R. Drew, Drew, Cooper & Anding, Grand Rapids, MI, for VFM.

## OPINION

QUIST, District Judge.

Plaintiffs, Action Auto Glass and Visions Auto Glass, filed this action against Defendant, Auto Glass Specialists, in Kent County Circuit Court on or about September 26, 2000, alleging various state law claims arising out of certain advertisements by Defendant implying that Plaintiffs' practice of waiving the insurance deductible from customers for automobile windshield replacements is fraudulent or otherwise unlawful. Defendant removed the case to this Court on October 6, 2000, based upon diversity of citizenship. Defendant has now moved to dismiss Counts II and III of the complaint, which allege claims under the Michigan Consumer Protection Act ("MCPA"), M.C.L. §§ 445.901 to .922.

### Overview

Plaintiffs and Defendant are competitors in the business of replacing windshields and other glass components in automobiles and other heavy equipment throughout the West Michigan area. (Compl.¶ 7.) Plaintiffs advertise their business by offering customers coupons which customers can use to offset all or part of an insurance deductible when having a windshield replaced. (*Id.* ¶ 8.) Plaintiffs enter into contracts each year with various insurance companies which establish the prices the insurance companies agree to pay Plaintiffs to replace windshields in various makes and models of automobiles. (*Id.* ¶ 11.) Plaintiffs allege that Defendant engaged in an advertising campaign which, although not expressly mentioning Plaintiffs by name, was targeted directly at Plaintiffs. According to Plaintiffs, the advertisement, which ran in the *Grand Rapids Press* on September 4, 2000, stated, "If the glass company is to make a profit on a couponed job it **must** do one of three things: 1) Inflate the price to cover the coupon amount, 2) Cut corners on materials & installation, or 3) Overbill the insurance company (also known as fraud)." (*Id.* ¶¶ 18, 21 (emphasis in original).) Plaintiffs contend that Defendant's advertisement is false and misleading because it implies that Plaintiffs' coupon practices are fraudulent.

In Count II of their complaint, Plaintiffs allege that Defendant violated the MCPA by making false and misleading statements in their business advertisement suggesting that Plaintiffs engage in insurance fraud by offering coupons to offset the cost of the deductible. In Count III, Plaintiffs allege that Defendant violated the MCPA when it published an advertisement in the

*Grand Rapids Press* on September 2, 2000, which suggested that Plaintiffs purchased two shipments of defective windshields that Defendant rejected. Defendant contends that both of these claims must be dismissed because the MCPA is intended to protect individual consumers rather than businesses and because Plaintiffs have not alleged that Defendant provided any goods, property, or services to Plaintiffs or that Plaintiffs provided any goods, property, or services to Defendant.

### Standard for Dismissal

An action may be dismissed if the complaint fails to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). The moving party has the burden of proving that no claim exists. Although a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions of legal conclusions. *In re De-Lorean Motor Co. (Allard v. Weitzman)*, 991 F.2d 1236, 1240 (6th Cir.1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)). All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party. 2A James W. Moore, *Moore's Federal Practice*, ¶ 12.34[1][b] (3d ed.1997). The Court need not, however, accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Dismissal is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

### Discussion

The MCPA prohibits certain "[u]nfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce." M.C.L. § 445.903(1). Plaintiffs allege that Defendant's conduct violated §§ 3(1)(f), (i), and (s) of the MCPA by "[d]isparaging the goods, services, business, or reputation of another by false or misleading representation of fact," by "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of, price reductions," and by "[f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer." M.C.L. §§ 445.903(1)(f), (i), and (s). "Trade or commerce" is defined as:

> the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity.

M.C.L. § 445.902(d). The intent of the MCPA is "to protect consumers in their purchases of goods which are primarily used for personal, family or household purposes." *Noggles v. Battle Creek Wrecking, Inc.*, 153 Mich.App. 363, 367, 395 N.W.2d 322, 324 (1986). Defendant's motion presents two issues under the MCPA: (1) whether Plaintiffs' complaint contains allegations that meet the "trade or commerce" requirement; and (2) whether Plaintiffs, as businesses, have standing to assert claims under the MCPA.

Defendant contends that Plaintiffs' claims do not satisfy the "trade or commerce" requirement because there is no allegation that Plaintiffs and Defendant engaged in trade or commerce with each

other by providing or receiving "goods, property, or service primarily for personal, family, or household purposes." In support of its argument, Defendant cites *Cosmetic Dermatology and Vein Centers of Downriver, P.C. v. New Faces Skin Care Centers, Ltd.*, 91 F.Supp.2d 1045 (E.D.Mich.2000). In that case, the plaintiff, Cosmetic Dermatology and Vein Centers of Downriver, P.C., sued a competitor, Skin Care Specialists, P.C., and others, alleging claims of trademark infringement and violation of the MCPA. The court granted the defendants' motion for summary judgment on the MCPA claim because the plaintiff and the defendants never engaged in trade or commerce with each other, i.e., there was no "purchase or transaction" involving goods or property " 'primarily for personal, family, or household purposes.' " *Id.* at 1060 (quoting MCPA § 2(d)). The court noted that *John Labatt Ltd. v. Molson Breweries*, 853 F.Supp. 965 (E.D.Mich.1994), had allowed an MCPA action between competitors to go forward, but declined to follow that case because, as noted by another court in *Robertson v. State Farm Fire and Casualty Co.*, 890 F.Supp. 671 (E.D.Mich.1995), the *Labatt* court failed to analyze whether the plaintiff satisfied the "trade or commerce" requirement. *See Cosmetic Dermatology & Vein Ctrs.*, 91 F.Supp.2d at 1060. The court held, "[b]ecause Plaintiffs did not buy goods or services from the Defendants within the meaning of the Act, they did not engage in 'trade or commerce.' " *Id.*

*Robertson* did not involve a claim between competitors. Rather, the plaintiffs in that case alleged that their insurance company violated the MCPA based upon representations by the insurer's agent that certain insurance policies would cover the plaintiffs' farming operations. In addressing the insurer's argument that the MCPA did not apply because the insurance policies were purchased for business rather than personal, family or household purposes, the court acknowledged that *Labatt* allowed a claim by a business under the MCPA but distinguished *Labatt* because *Labatt* involved the issue of whether a competitor had standing to sue and thus had no application because the plaintiff farmers and the insurance company were not competitors. *See Robertson*, 890 F.Supp. at 678. However, the court stated that it would reject *Labatt* even if that case did apply because the *Labatt* court failed to consider the "trade or commerce" requirement apart from the issue of standing. *See id.* at 678–79. The court reasoned:

> The court believes that the reason for such tunneled vision may have been that it is highly unlikely that a competitor would be purchasing goods for "personal, family, or household purposes." This may explain in part why courts have held that the MCPA does not apply to businesses; it would be rare indeed (if even possible) for a corporation to purchase goods for "personal, family or household purposes." The only scenario the court can envision is one wherein a corporation would buy its employees products as a holiday bonus, e.g., televisions, stereos, etc., which will be used by the employees in their respective homes. In such a scenario, it is arguable that the corporation is buying goods for personal, family, or household purposes. Of course, it is also arguable that the corporation bought the goods for the business purpose of passing out a holiday bonus and that the ultimate use by the employees is not relevant to the corporation's purpose. Regardless, ignoring the clause requiring the goods purchased (or services procured) to be for "personal, family, or household purposes" is, in the court's mind, improper.

*Id.* at 679.

Notwithstanding the decisions in *Cosmetic Dermatology and Vein Centers* and

*Robertson*, the Court finds that Plaintiffs' MCPA claims do satisfy the MCPA's "trade or commerce" requirement. Defendant's assertion that Plaintiffs must allege that there has been a transaction between the parties involving the purchase of consumer goods in order to assert a claim under the MCPA impermissibly narrows the scope of the statutory definition of trade or commerce. By its terms, the definition of "trade or commerce" focuses on "the conduct of a business providing [consumer] goods, property, or service," rather than upon the occurrence of a specific transaction between the plaintiff and the defendant. M.C.L. § 445.902(d). Such conduct includes "advertising, solicitation, offering for sale or rent, sale, lease, or distribution." *Id.* There is no requirement that consumer goods be *sold or purchased* in order to constitute "trade or commerce," although a sale of consumer goods or services is an example of conduct constituting "trade or commerce." Moreover, Defendant does not contend that it was not engaged in a business providing goods or services to consumers nor does it argue that advertising is not conduct constituting "trade or commerce."

The Court finds *Robertson* distinguishable because the claim in that case was based on the purchase of an insurance policy—conduct giving rise to a transaction between the parties—rather than upon allegedly fraudulent and deceptive advertising by a competitor. The central focus of the *Robertson* court's discussion was the reason why the MCPA does not apply to purchases by businesses: "it would be rare indeed (if even possible) for a corporation to purchase goods for 'personal, family or household purposes.'" *Robertson*, 890 F.Supp. at 679. While that observation is true in cases involving a purchase by a business, it has no application where the conduct at issue is advertising, specifically, false advertising. In other words, this Court interprets the *Robertson* court's

statement that "the competitor would still have to show—as would all other plaintiffs —that the goods or property bought (or services procured) were 'primarily for personal, family or household purposes,'" *id.*, as addressing the specific facts of that case rather than as a broad proposition that "trade or commerce" only exists where a purchase of consumer goods or services occurs between the plaintiff and the defendant. Certainly, any plaintiff asserting a claim under the MCPA would have to show that the defendant is in the business of providing consumer goods or services. M.C.L. § 445.902(d). However, to the extent that *Robertson* intended to establish a rule that a purchase must have occurred between the parties in order to satisfy the "trade or commerce" requirement, the Court disagrees with that result because it contradicts the express language of the MCPA as well as the remedial purposes of the MCPA, *see Price v. Long Realty, Inc.*, 199 Mich.App. 461, 471, 502 N.W.2d 337, 342 (1993) (per curiam), which include protecting consumers from false or misleading advertising, *see* M.C.L. § 445.903(1)(f), (i). Likewise, the Court disagrees with the holding in *Cosmetic Dermatology & Vein Centers* to the extent it requires an actual purchase by the plaintiff from the defendant in order to establish "trade or commerce" within the meaning of the MCPA.

■ The second issue presented is whether a business competitor has standing under the MCPA. As mentioned above, the *Labatt* court held that a business competitor has standing to sue under the MCPA. *See Labatt*, 853 F.Supp. at 969–70. In reaching its conclusion, the *Labatt* court rejected the holding in *Wynn Oil Co. v. American Way Service Corp.*, 736 F.Supp. 746 (E.D.Mich.1990), *aff'd in part, rev'd in part on other grounds*, 943 F.2d 595 (6th Cir.1991), that businesses

cannot sue under the MCPA. The *Labatt* court disagreed with *Wynn* because the cases cited by *Wynn* did not address the issue of standing. For example, the court noted that in *Noggles v. Battle Creek Wrecking, Inc.,* 153 Mich.App. 363, 395 N.W.2d 322 (1986), the issue was whether the phrase "primarily for personal, family, or household purposes" in M.C.L. § 445.902(d) was intended to modify the words "conduct of business" or the words "goods, property, or service." *See Labatt,* 853 F.Supp. at 968 (quoting *Noggles,* 153 Mich.App. at 366, 395 N.W.2d at 324). The Michigan Court of Appeals concluded that the phrase was intended to modify "goods, property, or service" to allow the MCPA to apply to transactions involving consumer goods regardless of whether the defendant was primarily engaged in the business of furnishing such goods. *See id.* (citing *Noggles* ). The *Labatt* court concluded, "[i]t does not follow from the holding of *Noggles,* or from the observation in *Noggles* that 'a clear legislative intent in enacting the [MCPA] was to protect consumers' that business competitors do not have standing to bring action under the MCPA." *Id.* The *Labatt* court also distinguished other cases cited in *Wynn* on the grounds that they either involved commercial transactions or were based upon materially different statutory language and cited two cases, *Janda v. Riley–Meggs Industries, Inc.,* 764 F.Supp. 1223 (E.D.Mich.1991), and *Nintendo of America v. Elcon Industries, Inc.,* 564 F.Supp. 937 (E.D.Mich.1982), which, while not specifically addressing the issue of standing, permitted non-consumer suits under the MCPA. The *Labatt* court found additional support for its conclusion in a comparison of the purpose of the MCPA to that of the Lanham Act:

Implicit in the cases finding a right of action in non-consumers under the MCPA is the understanding that the intent of protecting consumers is well served by allowing suit to be brought by non-consumers who have a significant stake in the events. Allowing a competitor to bring suit under a statute designed ultimately to protect the interests of consumers is not a novel approach to enforcement, and is routine, for instance, in actions under the Lanham Act....

The MCPA addresses in part the same policy as section 43(a) of the Lanham Act, and that policy is equally well served by allowing suit to be brought under the Act by business competitors. No persuasive authority holds otherwise, and nothing in the text of the statute suggests an intention on the part of the legislature to limit to consumers the right of action created under the MCPA.

*Id.* at 970 (citing *Coca–Cola Co. v. Procter & Gamble Co.,* 822 F.2d 28, 31 (6th Cir. 1987) (footnote omitted)).

Defendant cites *Robertson* and *National Union Fire Insurance Co. of Pittsburgh v. Arioli,* 941 F.Supp. 646 (E.D.Mich.1996), as support for its position that the MCPA protects only individual consumers and not businesses. However, the *Robertson* court did not hold that a business competitor could not have standing under the MCPA. Rather, it assumed standing as part of its analysis of the "trade or commerce" issue. *See Robertson,* 890 F.Supp. at 678–79. *Arioli* also does not address the issue of competitor standing because that case did not involve a claim by a competitor but rather a claim by a plaintiff that was a party to a commercial, rather than consumer, transaction. *See Arioli,* 941 F.Supp. at 656.

This Court agrees with the *Labatt* court's analysis of competitor standing under the MCPA. Apart from the *Labatt* court's reasoning, this Court relies on the express language of the statutory provision authorizing actions by private parties,

M.C.L. § 445.911. In particular, that section provides, in part:

(1) Whether or not he seeks damages or has an adequate remedy at law, a person may bring an action to do either or both of the following:

(a) Obtain a declaratory judgment that a method, act, or practice is unlawful under section 3.

(b) Enjoin in accordance with the principles of equity a person who is engaging or is about to engage in a method, act, or practice which is unlawful under section 3.

(2) Except in a class action, a person who suffers loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees.

M.C.L. § 445.911(1), (2). A "person" includes "a natural person, corporation, trust, partnership, incorporated or unincorporated association, or other legal entity." M.C.L. § 445.902(c). While it is true that the legislature used the word "person" to describe who may be a plaintiff as well as who may be a defendant, it is also true that had the legislature intended to allow only individuals to sue under the MCPA, it could have easily used the term "individual" to limit the potential plaintiffs under M.C.L. § 445.911(1) and (2). Because the word "person" as used in that section also includes corporations and other entities—businesses not engaging in consumer transactions—the Court concludes that business competitors have standing under the MCPA because it must presume that the legislature intended the meaning expressed in the statute. *See People v. Reynolds,* 240 Mich.App. 250, 253, 611 N.W.2d 316, 317 (2000) (per curiam). Furthermore, the result of allowing business competitors to maintain actions under the MCPA is consistent with the intended purpose of protecting consumers. In a case such as this, for example, where a competitor makes allegedly false statements about a competitor's product or business practices, the ultimate resulting harm is to the consumer, who may be swayed into purchasing an inferior product or paying more for the same product. Under the facts alleged in this case, consumers may have been harmed by Defendant's allegedly false statements by paying more for goods or services. Therefore, Plaintiffs have standing to sue under the MCPA.

### Conclusion

For the foregoing reasons, the Court will deny Defendant's motion to dismiss.