EBERHARD v HARPER-GRACE HOSPITALS

Docket No. 103426. Submitted February 8, 1989, at Detroit. Decided August 7, 1989. Leave to appeal applied for.

On May 30, 1985, Thomas Eberhard brought an action in Wayne Circuit Court against Harper-Grace Hospitals, Grace Hospital Division, alleging that at the time of his premature birth at Grace Hospital in 1955 he was prescribed extra oxygen and that, because of the failure of the hospital to provide proper instruments to analyze oxygen concentrations, he received improper oxygen concentrations and was thereby rendered blind. Plaintiff further alleged that he learned less than six months prior to filing suit that his blindness was possibly caused by the faulty administration of oxygen rather than being congenital. Defendant moved for summary disposition on the basis of the doctrine of charitable immunity as it existed in 1955. Plaintiff raised the negligent instrumentality exception to charitable immunity, which defendant, in turn, argued was barred by the operation of the doctrine of laches. The trial court, James J. Rashid, J., held that the doctrine of charitable immunity barred all of plaintiff's claims except the negligent instrumentality claim, but that the negligent instrumentality claim was barred by the operation of laches. Plaintiff appealed, raising as his only issue whether the trial court erred when it held that the negligent instrumentality claim was barred by the equitable defense of laches. The Court of Appeals on its own motion remanded the case to the circuit court for consideration of the issue of the statute of limitations. The trial court granted summary disposition in favor of defendant on the basis that the matter was barred by the running of the statutory period.

The Court of Appeals *held:*

REFERENCES

Am Jur 2d, Actions § 90; Limitation of Actions §§ 61-63; Physicians, Surgeons, and Other Healers §§ 316, 321.

Statute of limitations applicable to malpractice action against physician, surgeon, dentist, or similar practitioner. 80 ALR2d 320.

When statute of limitations commences to run against malpractice action against physician, surgeon, dentist, or similar practitioner. 80 ALR2d 368.

1. Since in 1955 the two-year malpractice period of limitations was not applicable to hospitals, the applicable period of limitation is the three-year period for general tort actions.

2. While this action is subject to the general tort period of limitation rather than the malpractice period of limitation, logic and equity require that the common-law discovery rule applicable to malpractice claims in 1955 be applied in this situation. Accordingly, the limitation period would not start to run until plaintiff discovered, or by the exercise of reasonable care should have discovered, the wrongful act.

3. The question whether plaintiff knew or should have known of the hospital's alleged wrongful act must be answered by the trial court upon remand.

4. The equitable defense of laches, in appropriate circumstances, may be used as a defense to a legal claim.

5. The trial court erred in its application of the doctrine of laches by failing to consider whether plaintiff had been wanting in due diligence.

Reversed and remanded.

1. HOSPITALS — LIMITATION OF ACTIONS.

An action against a hospital for injuries allegedly caused by the negligent failure of the hospital to have supplied adequate equipment in 1955 when the alleged injury occurred is governed by the three-year general tort period of limitation rather than the two-year malpractice period of limitation, since in 1955 the malpractice period of limitation was not applicable to hospitals (MCL 609.13; MSA 27.605).

2. HOSPITALS — LIMITATION OF ACTIONS — DISCOVERY.

An action which alleges that a hospital in 1955 failed to provide proper equipment, although subject to the three-year general tort period of limitation, is subject to the common-law malpractice discovery rule which provided that the period of limitation did not start to run until the injured party discovered, or by the exercise of reasonable care should have discovered, the wrongful act.

3. ACTIONS — DEFENSES — ACTIONS AT LAW — LACHES.

An action at law may be subject to the equitable defense of laches; the fact that the statute making statutory periods of limitation equally applicable to all actions whether equitable or legal also provides that the doctrine of laches shall also apply in actions where equitable relief is sought does not preclude the

raising of the defense of laches in appropriate actions at law (MCL 600.5815; MSA 27A.5815).

4. ACTIONS — DEFENSES — LACHES.

The successful assertion of a defense of laches requires a showing of passage of time combined with some prejudice to the party asserting the defense.

5. ACTIONS — DEFENSES — LACHES.

· The defense of laches is concerned mainly with the question of the equity of permitting a claim to be enforced and depends on whether the plaintiff has been wanting in due diligence.

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick* (by *Richard E. Shaw*), for plaintiff.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *David J. Cooper*), for defendant.

Before: CYNAR, P.J., and SHEPHERD and MARILYN KELLY, JJ.

SHEPHERD, J. Plaintiff Thomas Eberhard appeals as of right from an August 31, 1987, order granting summary disposition in favor of the defendant on plaintiff's negligence claim based on the equitable doctrine of laches. Following oral arguments in this appeal, we remanded the case to the trial court for a hearing and decision on the statute of limitations issue pled by defendant as an alternative affirmative defense. Our purpose in doing so was to have the case developed in as full a posture as possible on both the equitable and legal defenses pled by defendant before reviewing the court's decision to dismiss plaintiff's complaint for lack of timeliness. On remand, the trial court ruled that plaintiff's claim was barred by the applicable three-year statute of limitations. We hold that the trial court applied an incorrect analysis in dismissing plaintiff's complaint on the equitable and legal

defenses asserted and, accordingly, find it necessary to reverse and again remand for further proceedings on these defenses.

## I

### THE FACTS

The factual basis for this lawsuit is an allegation that medical care rendered to plaintiff just after his premature birth in 1955 resulted in blindness. Thirty years later on May 30, 1985, plaintiff filed the instant action against the defendant. Plaintiff alleged that he was prescribed extra oxygen after birth and that the defendant breached a duty to provide an apparatus to analyze the oxygen concentration in accordance with the standard of care at that time. Plaintiff claimed that the lack of this instrumentality caused or was a contributing factor of his blindness. With regard to the untimeliness of his complaint, plaintiff alleged:

> 10. That the Plaintiff was told by his doctors through the years that his blindness was due to congenital factors, according to the hospital records.
> 11. That the Plaintiff received information within the last six (6) months which gave the Plaintiff reason to investigate causative factors.
> 12. That the Defendant Hospital report indicates a final diagnosis of congential [sic] nerve causation, for the blindness although Dr. Croll's notes indicate a suspicion of retrolentil fribroplasia [sic] connected to oxygen administration.

Defendant subsequently moved for summary disposition on the basis that plaintiff's action was barred by the doctrine of charitable immunity in effect during 1955. The trial court agreed with defendant. The trial court also held that plaintiff's

attempt to plead an exception to the doctrine of charitable immunity, namely a "negligent instrumentality" claim, was untimely.

On appeal, we are not presented with any issues pertaining to the trial court's application of the doctrine of charitable immunity to this case. The two narrow issues presented concern the trial court's application of the equitable doctrine of laches and the applicable statute of limitation to this case.

## II

### THE STATUTE OF LIMITATIONS DEFENSE

The legal issue we are presented with is whether the so-called "discovery rule" applies to the statute of limitation governing plaintiff's cause of action. The discovery rule in tort cases generally looks to whether the plaintiff knew of, or with the exercise of reasonable diligence should have discovered, his or her loss or the wrongful act underlying the cause of action. See *Larson v Johns-Manville Sales Corp*, 427 Mich 301; 399 NW2d 1 (1986).

In reviewing this issue, we begin by looking to the current version of the statute of limitations governing causes of actions based on medical malpractice § 5838a of the Revised Judicature Act of 1961, MCL 600.5838a; MSA 27A.5838a:

> (1) *A claim based on the medical malpractice of a* person who is, or who holds himself or herself out to be, a licensed health care professional, *licensed health facility or agency,* employee or agent of a licensed health facility or agency who is engaging in or otherwise assisting in medical care and treatment, or any other health care professional, whether or not licensed by the state, accrues at the time of the act or omission which is the basis for the claim of medical malpractice,

regardless of the time the plaintiff discovers or otherwise has knowledge of the claim. . . .

(2) Except as otherwise provided in this subsection, an action involving a claim based on medical malpractice may be commenced at any time within the applicable period prescribed in sections 5805 or 5851 to 5856, or within 6 months after the plaintiff discovers or should have discovered the existence of the claim, whichever is later. *However, the claim shall not be commenced later than 6 years after the date of the act or omission which is the basis for the claim.* The burden of proving that the plaintiff, as a result of physical discomfort, appearance, condition, or otherwise, neither discovered nor should have discovered the existence of the claim at least 6 months before the expiration of the period otherwise applicable to the claim shall be on the plaintiff. A medical malpractice action with is not commenced within the time prescribed by this subsection is barred. This subsection shall not apply, and the plaintiff shall be subject to the period of limitations set forth in subsection (3), under 1 or more of the following circumstances:

(a) If discovery of the existence of the claim was prevented by the fraudulent conduct of a health care provider.

(b) If a foreign object was wrongfully left in the body of the patient.

(c) If the injury involves the reproductive system of the plaintiff. [Emphasis added.][1]

1986 PA 178, § 1, which added § 5838a to the RJA, does not apply to causes of action arising before October 1, 1986. See 1986 PA 178, § 3. Prior to the addition of this provision, the only provision specifically concerning the accrual of malpractice

---

[1] Section 5805, MCL 600.5805; MSA 27A.5805, sets forth periods of limitation ranging from one to three years for actions to recover damages for injuries to persons or property. Sections 5851 to 5856, MCL 600.5851 to 600.5856; MSA 27A.5851 to 27A.5856, generally set forth events, such as disability due to infancy, that toll the running of the limitation period.

claims for statute of limitations purposes was contained in RJA § 5838, MCL 600.5838; MSA 27A.5838. In *Bronson v Sisters of Mercy Health Corp*, 175 Mich App 647; 438 NW2d 276 (1989), this Court construed the meaning of "claims based on malpractice of a hospital" under the 1975 amendment to RJA § 5838, 1975 PA 142, as evidencing a legislative intent to alter the common law by subjecting claims against a hospital for the negligent performance of professional medical services to the period of limitations applicable to medical malpractice actions. This language was moved to RJA § 5838a when 1986 PA 178, § 1, was added. The current statute clearly incorporates the discovery rule, while adding a six-year limit on causes of action.

The complaint here alleged negligence in the defendant's breach of a duty to meet the standard of care applicable to hospitals by failing to provide the proper instrumentality to monitor the oxygen concentration administered to plaintiff. Under the current statute, these acts sound in malpractice rather than ordinary negligence. See *Bronson, supra*, p 653. Hence, had the current version of the statute been in effect at the time plaintiff's cause of action arose, it seems clear that it would be subject to the six-year cap on actions established by RJA § 5838a(2).

However, because plaintiff's cause of action arose in 1955, this action is governed by the now-repealed provisions of the Judicature Act of 1915, as amended:[2]

All actions in any of the courts of this state

---

[2] Courts have consistently held that the applicable statute of limitations is that in effect at the time a plaintiff's cause of action arises. See for example *Wakefield v Hills*, 173 Mich App 215, 217; 433 NW2d 410 (1988), and *Winfrey v Farhat*, 382 Mich 380, 389-390; 170 NW2d 34 (1969) (applying the savings clause of RJA § 9905(1)).

shall be commenced within 6 years next after the
causes of action shall accrue, and not afterward,
except as hereinafter specified: Provided, however,

* * *

2. Actions to recover damages for injuries to
person or property and actions for trespass upon
lands shall be brought within 3 years from the
time said actions accrue, and not afterwards;

3. Actions . . . for malpractice of physicians,
surgeons or dentists, . . . shall be brought within 2
years from the time the cause for action accrues,
and not afterwards. [MCL 609.13; MSA 27.605.]

At the time these limitation periods were in
effect, our Supreme Court in *Johnson v Caldwell,*
371 Mich 368, 379; 123 NW2d 785 (1963), adopted
the following discovery rule for actions against
physicians which were subject to the two-year
period of limitation of subsection (3):

The limitation statute or statutes in malpractice
cases do not start to run until the date of discov-
ery, or the date when, by the exercise of reason-
able care, plaintiff should have discovered the
wrongful act.

In adopting this rule, the *Johnson* Court consid-
ered the "inequities" that would result in the case
at hand if the discovery rule were not adopted:

The grave inequities which could follow the
application of the last treatment rule are well
illustrated by the case at bar. Plaintiff testified, as
pointed out earlier, "I accepted his [defendant's]
word [that] nothing could be done for it." As
phrased in *Ayers v. Morgan* [397 Pa 282, 285; 154
A2d 788 (1959)], it would be "illogical and unintel-
ligent" to require a patient to determine on the
date he last consults a physician that malpractice
has taken place, when he in fact relies upon the

advice that constitutes the malpractice. So to hold would punish the patient who relies upon his doctor's advice and places a premium on skepticism and distrust. [*Id.*]

However, the rationale for adopting the discovery rule was not so much a concern for equity, but rather, reflected a consideration of a plaintiff's right to have a reasonable time to bring an action. In the subsequent case of *Dyke v Richard,* 390 Mich 739, 746-747; 213 NW2d 185 (1973), our Supreme Court explained:[3]

> Justice COOLEY described our responsibility in dealing with such statutes of limitation in *Price v Hopkin,* 13 Mich 318, 324 (1865):
>
> "The general power of the legislature to pass statutes of limitation is not doubted. The time that these statutes shall allow for bringing suits is to be fixed by the legislative judgment, and where the legislature has fairly exercised its discretion, no court is at liberty to review its action, and to annul the law, because in their opinion the legislative power has been unwisely exercised. But the legislative authority is not so entirely unlimited that, under the name of a statute limiting the time within which a party shall resort to his legal remedy, all remedy whatsoever may be taken away. . . . It is of the essence of a law of limitation that it shall afford a reasonable time within which suit may be brought [citations omitted] and a statute that fails to do this cannot possibly be sustained as a law of limitations, but would be a palpable violation of the constitutional provision that no person shall be deprived of property without due process of law."
>
> Since "[i]t is of the essence of a law of limitation

---

[3] The *Dyke* Court reaffirmed the discovery rule in *Johnson* for purposes of the limitation period under the RJA. The Court found that the Legislature had no intent to abolish the rule when enacting the RJA.

that it shall afford a reasonable time within which suit may be brought . . .", *Price, supra,* a statute which extinguishes the right to bring suit cannot be enforced as a law of limitation. As to a person who does not know, or in the exercise of reasonable diligence could not ascertain within the two year period that he has a cause of action, this statute has the effect of abolishing his right to bring suit.

As previously noted, the current statute, RJA § 5838a, attempts to deal with this problem by incorporating the discovery rule, while at the same time lessening the harshness to a defendant by providing a six-year cap on the limitation period, except in certain circumstances. Apparently, the Legislature has concluded that, except for certain circumstances, a plaintiff exercising reasonable diligence should discover the cause of action within six years.

By contrast, the applicable statute here under the Judicature Act of 1915 is silent on the discovery rule. We agree with the defendant to the extent that it asserts that the two-year limitation period of subsection (3) does not apply. The three-year limitation period of subsection (2) applies when a plaintiff seeks damages for personal injuries arising from the negligent performance of medical services from defendants other than physicians, surgeons or dentists. See *Kambas v St Joseph's Mercy Hospital of Detroit,* 389 Mich 249; 205 NW2d 431 (1973) (where a negligent act of a nurse is alleged, the three-year limitation period applies to both the nurse and the hospital which is vicariously liable). However, this does not dispose of the question of whether the discovery rule should be applied to the accrual date provided by subsection (2). When the situation requires it, a discovery rule has been applied to determine the

date of accrual under a statute of limitations. *Larson, supra,* p 310.

We hold that the situation in this case requires an application of the discovery rule recognized by our Supreme Court in *Johnson, supra.* This holding is necessary to effectuate the rule that a law of limitation cannot be enforced unless a reasonable time to bring suit is afforded, *Dyke, supra,* and is consistent with the well-settled principle of statutory construction that a court has a duty to construe a statute as constitutional unless the contrary clearly appears. *McDonald Pontiac-Cadillac-GMC, Inc v Saginaw Co Prosecuting Attorney,* 150 Mich App 52, 58; 388 NW2d 301 (1986), lv den 426 Mich 867 (1986), cert den 108 S Ct 86 (1987).

The only distinguishing factor between subsections (2) and (3) of the statute applicable in this case is that subsection (3) has a one year shorter period of limitation and applies to a different class of defendants, i.e., a physician rather than the hospital itself. Neither subsection expresses a legislative intent to effectively extinguish the right of a plaintiff who does not know, and with the exercise of reasonable diligence could not ascertain, that he has a cause of action relating to his medical care. In the instant case, we note that plaintiff alleges that he relied on the medical diagnosis provided by his physicians as a reason for not investigating other possible causes of his blindness. Although this alleged misdiagnosis is not the act upon which defendant seeks to impose liability on the defendant, it is relevant to the question of what tools of discovery were available to plaintiff and whether, with reasonable diligence, plaintiff should have discovered that he had a cause of action relating to the oxygen administered to him at the defendant hospital.

The factual question of whether plaintiff knew,

or with reasonable diligence should have known, of the hospital's alleged wrongful act in failing to provide an apparatus to monitor the oxygen concentration administered to him has not yet been addressed in the lower court. Accordingly, it is necessary to remand to the trial court for a hearing and decision on when, under the discovery rule, plaintiff's cause of action accrued for purposes of the statute of limitation.

## III

### THE LACHES DEFENSE

In reviewing plaintiff's challenge to the trial court's application of the equitable doctrine of laches to this case, we begin by noting that this is not a defense that ordinarily should be addressed if a statute of limitations will bar a claim. This is so because laches is viewed as the equitable counterpart to the statute of limitations defense available at law, *Lothian v Detroit*, 414 Mich 160, 165; 324 NW2d 9 (1982), and it is a familiar principle of equity that relief will not be granted where there is an adequate remedy at law. *Arnold v Ellis*, 5 Mich App 101, 111; 145 NW2d 822 (1966).

Plaintiff relies on the following statutory provision of the RJA to argue that laches is only applicable to actions where the plaintiff seeks equitable relief:

> The prescribed period of limitations shall apply equally to all actions whether equitable or legal relief is sought. The equitable doctrine of laches shall also apply in actions where equitable relief is sought. [MCL 600.5815; MSA 27A.5815.]

We reject this argument for three reasons.

First, the RJA does not govern the applicable

statute of limitations in this case for the reason that plaintiff's cause of action arose in 1955.

Secondly, we can discern no legislative intent in the second sentence of RJA § 5815 to preclude a defendant from seeking equitable relief in an action at law by way of an affirmative defense based on laches. The primary goal of statutory construction is to ascertain and effectuate legislative intent. *Feld v Robert & Charles Beauty Salon,* 174 Mich App 309, 313-314; 435 NW2d 474 (1989). The statute here evidences only a legislative intent to subject equity actions to the same statute of limitations available for law actions, thereby modifying the prior judicial practice of applying a statute of limitations by analogy in an equity action. See *Olitkowski v St Casimir's Savings & Loan Ass'n,* 302 Mich 303, 317; 4 NW2d 664 (1942), and *Young v Young,* 200 Mich 236, 243; 167 NW 23 (1918).

Third, the cases relied on by plaintiff actually support the notion that the equitable doctrine of laches is available in an action at law. In *Lothian, supra,* p 168, our Supreme Court, quoting from Walsh, Equity, § 102, p 472, observed that the doctrine of laches reflects "the exercise of the reserved power of equity to withhold relief otherwise regularly given where in the particular case the granting of such relief would be unfair and unjust." The *Lothian* Court went on to state that laches, in the traditional context, has been applied in cases which are "purely equitable" or which display *"compelling equities." Id.,* p 170. Another of the cases relied on by plaintiff is *McRaild v Shephard Lincoln Mercury, Inc,* 141 Mich App 406, 411; 367 NW2d 404 (1985), which involved an action for damages under the Michigan Consumer Protection Act. This Court held:

Defendants also claim that plaintiff's claim

should be barred by laches. Mere delay in asserting a claim for a period less than that in the statute of limitations does not constitute such laches as will defeat recovery in law or equity. *Kaminski v Wayne Co Board of Auditors,* 287 Mich 62, 67; 282 NW 902 (1938). The limitation period under the Act is six years. MCL 445.911(7); MSA 19.418(11)(7). Defendants have not shown prejudice by plaintiff's delay of about two years before filing suit. The claim was not barred by laches.

The Supreme Court case relied on in *McRaild, supra,* was an action at law. As in *McRaild,* our Supreme Court recognized that there may be "exceptional circumstances" that will "constitute such laches as will defeat plaintiff's recovery either in law or in equity." *Kaminski, supra,* p 67. Nevertheless, the *Kaminski* Court found no facts justifying the application of laches. See also *Kipp v State Highway Comm'r,* 286 Mich 202, 210; 281 NW 592 (1938) (stating that laches is a good equitable defense in an action at law in jurisdictions where equitable defenses may be set up in a law action).

What we deduce from the above is that there may be exceptional circumstances or "compelling equities" that will justify granting the equitable relief of laches to a defendant in an action at law, but that in none of those cases were there found circumstances sufficient to justify the relief.

Based on the foregoing, we reject plaintiff's assertion that RJA § 5815 precludes a trial court from applying the doctrine of laches to this case. The trial court's ability to do so is derived from its reserved power of equity to withhold relief that would be inequitable and unjust.[4]

---

[4] The notion that a court may, in a particular suit at law, grant such relief as is equitable and just has long been recognized in Michigan. In *Barnard v German American Seminary,* 49 Mich 444,

More problematic is whether the trial court in the instant case applied a correct analysis to the question of whether laches should bar plaintiff's action at law for damages. Although this issue is not raised by plaintiff in this appeal, we choose to review it since it involves only a question of law and a consideration of this issue is necessary to prevent a miscarriage of justice. See MCR 7.216(A)(7), which grants this Court discretion to grant relief as the case may require it.

Unlike the statute of limitations, which is concerned with the fact of delay, the concern of laches is the effect of delay. *Lothian, supra,* p 168. A passage of time combined with prejudice to defendant is an essential prerequisite to invoking laches. *In re Crawford Estate,* 115 Mich App 19, 26; 320 NW2d 276 (1982). Also required, however, is a lack of due diligence on the part of the plaintiff:

> Laches is concerned mainly with the question of the inequity of permitting a claim to be enforced and depends on whether the plaintiff has been wanting in due diligence. [*Id.*]

Here, the trial court gave the following reasons for granting equitable relief to defendant based on laches:

> In oral argument, Plaintiff does however contend that they have alleged a negligent instrumen-

445; 13 NW 811 (1882), our Supreme Court observed with regard to equitable estoppel: "Estoppels *in pais* are called equitable estoppels, not because their recognition is peculiar to equitable tribunals but because they arise upon facts which render their application in the protection of rights equitable and just. Courts of equity recognize them in cases of equitable cognizance; but the courts of common law just as readily and freely." The doctrine of laches is closely akin to estoppel, as well as waiver and acquiescence. *Seaman v Ironwood Amusement Corp,* 283 Mich 220, 240; 278 NW 51 (1938).

tality claim against the Defendant. Although a liberal reading of the complaint would indicate that Plaintiff has set forth such a claim, the Court is of the opinion that the Doctrine of Laches bars the action as urged by Defendant. Since over 30 years have passed, the Court considers it next to impossible for the Defendant to attempt to respond to these allegations. The delay therefore works an unfair prejudice against the Defendant to such an extent that it would be inequitable to allow the Plaintiff to proceed. This Court cannot see how the Defendant would be able to go back over 30 years to the circumstances surrounding the selection and retention of employees and instrumentalities used by them in treating the Plaintiff.

We conclude that the trial court's reasons reflect an error of law inasmuch as the court considered only the passage of time and the prejudice to defendant without considering whether plaintiff was lacking in due diligence in failing to assert his claim against the defendant. Hence, the trial court's grant of summary disposition in favor of defendant based on laches is reversed.

Although the trial court may, on remand, consider the facts of this case under a proper analysis, a consideration of the question of laches will in all probability be academic on remand for the reason that the discovery rule applicable to the statute of limitations also incorporates this concept of due diligence. In other words, a finding that plaintiff was not lacking in due diligence would preclude a finding of the "compelling equities" necessary to invoke the doctrine of laches in an action at law.

IV

CONCLUSION

In summary, we conclude that the trial court

applied an incorrect analysis to both the statute of limitations and laches defenses raised by defendant. On remand, the trial court shall conduct proceedings consistent with this opinion to resolve factual issues pertaining to plaintiff's due diligence, or lack thereof, under the discovery rule. If the facts show that plaintiff's action is barred by the statute of limitations by reason of a lack of due diligence, there will be no reason to consider the defense of laches, and, if the facts show due diligence, the doctrine of laches does not apply.

Reversed and remanded. Jurisdiction is not retained.